We're ready to hear arguments in our last case. I see counsel is ready. You may proceed. Good morning, Your Honor. I'm Caleb Kruckenberg from the New Civil Liberties Alliance. I'm on behalf of the plaintiff, Clark Aposhian, in this case. Your Honor, the ATF was correct when it previously insisted that bump stocks do not fall within any of the classifications for firearms contained in federal law and that the ATF does not have the authority to restrict their lawful possession, use, or transfer. And that's why the ATF tried to rewrite the statute to enact a prospective regulatory ban on these devices. But as the ATF has acknowledged, it was without the authority to enact such a ban. It has also affirmatively waived any request for deference to its interpretation of the statute. Can deference be waived? Yes, Your Honor. Is that a method of statutory interpretation as the D.C. Circuit opined? It is not, Your Honor. So the D.C. Circuit's wrong? Well, and that's what this Court has already decided. That's the Hydropower Incorporated v. EPA case. That was an en banc decision by this Court. And in that case, we said that, well, you tell me. I'll see if you recall it as I do. Yes, Your Honor. In that case, the EPA did not ask for deference. And this Court, the majority of the Court sitting en banc, said, we will accept that waiver. We will accept that they have not asked for deference, and we will refuse to apply it. That is exactly the case we're in today. We need not resolve the issues regarding deference. Yes, Your Honor. Need not does not mean cannot. And I agree that that does not mean cannot. But I think the takeaway from that case is that certainly this Court believes that Chevron deference can be waived, and it can accept that waiver because it already has done so. Well, did the majority just find a different way to get to where they were going without applying Chevron? Well, Your Honor, just on the question of whether deference can be waived. I should caution you that I believe our work as an en banc court is probably the worst work we do. So I'll just give you that nugget of truth. Yes, Your Honor. And just by saying that we will not apply deference in that case, I think the Court says Chevron deference can be waived. I didn't see that analysis at all. I didn't see any real analysis of the issue of whether it could or couldn't be, and whether we understood that that's what we were ruling on in that case. Well, Your Honor, if Chevron deference could not be waived, then the majority in Hydropower Incorporated would not have been able to say we're not going to apply it in this case. They would have had to say we'll apply Chevron deference because it's unwaivable. So as regards this case, Chevron deference was even involved when the regulation was promulgated, even referred to in that rule. And it's clear that when the rule was crafted, it was viewed as a substantive rule by the ATF, and it was viewed and they wrote it with an eye towards deference. And now that has changed. And I think the most significant... What has changed? The attorney's argument has changed, but what we look at is what the agency did below. And what we look at, the reason we have Chevron deference is because of the expertise of the agency and the process that it went through below to arrive at its decision. I don't understand why we would consider what the attorneys tell us now we should do. Well, Your Honor, I mean, there are several other reasons why this Court should accept the waiver. And I think if we think about Chevron deference in terms of this is a grant of deference or this is a grant of authority to the executive that the executive can exercise or not. They can invoke deference or not. If we think about it in that way, which is that's the premise for Chevron deference, the executive has now said we do not want to exercise that grant of authority. And that is the executive's prerogative under the view of Chevron deference. But it did exercise it, and it chose to exercise it during the process. So now you're saying it can choose to exercise it, say we should give it Chevron deference, and then change its mind at any given point. Well, Your Honor, the executive can change its mind. I mean, that is a point that the executive continues to make in this case. And it is not appropriate for the Court to say this is the real view of the executive, this earlier in time statement, versus what the executive is saying now. The executive is the litigant, and they have said that we are waiving Chevron deference, we are not invoking it, and it is not appropriate in this case. So where are you if Chevron deference can't be waived? Well, Your Honor, I don't even think we have to get there because the ATF has also acknowledged that they have no substantive rulemaking authority in the first place. And so what they have said is that if this is a legislative rule, this is a substantive rule, and it attempts to rewrite the statute, they have agreed that it's invalid. And I think this Court can resolve that. But where did they agree that this rule is invalid? They agreed that they don't have substantive rulemaking power. And they said that in their principal brief on appeal. And we've quoted that. Even though the statutes have delegated authority, two chains of statutes, two acts have delegated authority to the Attorney General, and the Attorney General in turn delegated authority to the ATF to promulgate regulations. The authority has been delegated. What do you do with that? Again, we're getting to what people argue in briefs. I like to look at statutes, and I like to look at the record, and I like to look at the rule at issue here and what was considered when the rule was promulgated. And the argument that the litigants have agreed on, when we look at the statute, the delegation of authority is to an interpretive ruling. That's what the ATF has the authority to do. They can issue an interpretive ruling about a particular device. That's different than a substantive rule reclassifying or redefining what it is to be a machine gun. And the ATF has acknowledged that. But even if this Court disagrees with that analysis, the other thing the ATF has acknowledged is that there's no ambiguity in the statute itself. And what that means is. So that's different. I mean, if there's no ambiguity, there's no Chevron, right? Correct. And there's no rule because there's no gap to fill. And so can they concede ambiguity, or is that a question of law? That is a question of law for this Court. But I think it's worthwhile that the litigants all agree there is no ambiguity. And the government has agreed that the district court made an error on that point. And the reason there's no ambiguity, the reason we know that, is you look at the statute, it's very clear. The statute makes a distinction between machine guns and non-machine guns based on the operation of a trigger. And the courts that have interpreted that specific language, single function of a trigger, the term machine gun, have consistently held that those phrases are not ambiguous. And that should end the case right there. The statute's not ambiguous. The ATF has no authority to issue a gap-filling rule. There's nothing else to do. And that's the end of the case. Is this idea that the agency can at any time change its mind, essentially, about what authority it was or wasn't exercising, when does that end? I mean, if you had come into this litigation arguing Chevron different supplies, as we said it did during the rulemaking process, and we told you that it did, and you argued that in your briefs, and then tomorrow could you file a 28-J letter and say the agency has changed its mind? Well, the agency's entitled to change its mind. When? How long? At what point? I guess I'm asking you, what's the limitation on that? Well, I think that's probably the question for the agency. But I think when we're in court today and we're asking whether or not the agency is invoking deference, I mean, that's what Chevron deference asks, is whether they're asking for deference to their position. And the litigant is coming before the court today saying, no, we don't want that. And they've been very consistent throughout this case. They've never asked for deference. They waived it affirmatively before the district court, and it's never been a part of this case. And that brings to the other issue about the rule of lenity. I mean, I think there was a recognition by the government that because the rule of lenity has a role to play in this case, because it's a criminal statute, there are issues with raising deference, and there is a potential constitutional problem lurking in that. And I think the government has recognized that. And that is an additional reason why this court can't follow the D.C. Circuit's approach, because the D.C. Circuit's precedents have already diverged from this court's on the rule of lenity issue. And so what's our case that you like the best about the rule of lenity? Well, that's the NLRB case versus Oklahoma Fixture case. And certainly the majority of the court sitting en banc again said that the rule of lenity has some role to play. Remember. Yes. And as you pointed out, Judge Briscoe, in the concurrence, that case- Okay, there's a distinction. I have to defend myself. In that case, the entity at issue did not have both criminal and civil authority. Exactly, Your Honor. Here the ATF does. Yes. And that is why this is a stronger case, because this is a criminal statute, 922-0. But there's also civil enforcement under this statute. Well, not under 922-0. There could be under the registration prong. Right. But what we're talking about today is the definition of machine gun that applies to 922-0, which is a criminal statute and is criminally enforced by the government. And if the rule of lenity has any role, it certainly has a role there. And it's worth noting the government's position today is that everyone who purchased a bump stock lawfully with the government's explicit permission, with a classification ruling, just like my client, all half a million of those bump stock owners, according to the government, were actually in violation of 922-0 all along and should not have relied on their representations and could be criminally prosecuted and sent to federal prison for 10 years. If they continue to hold them. No. Because they have always been violating the rule of lenity. Well, I mean, in their rulemaking, though, they specifically at least attempted to put in language that, hey, all you people haven't been violating the law, but you will be. Exactly. If you don't turn it in on time. But the government is arguing today that they're doing nothing more than interpreting the statute. Because, again, there's no ambiguity for them to fill in with the substantive rule. So do you lose if we defer to the agency? No. Not at all. And, well, I don't think that this court is in a position to defer to the agency. No, I understand. But it's still not a reasonable. I'm moving on. I'm moving on. I'm going to beat that horse. Yes. If we do defer to them. Yes. It's still not a reasonable interpretation. And the reason is the operation of a bump stock, the way the government has described it, simply cannot fit with the statute. The statute says a single function of the trigger. And what that means is that the trigger functions and it continues to fire multiple rounds every time the trigger mechanism is engaged. A bump stock, as the government has described it, involves the forceful push forward with the non-shooting hand, the constant pull with the shooting hand, and the trigger has to be re-engaged between every round. And the government has agreed the trigger finger leaves the trigger, the triggering mechanism is reset, another round is chambered in the gun, and then a bullet shoots. That cannot be squared with the statute, which draws this mechanistic distinction between. So the one function refers to the movement of the finger? Or how do you define it? It refers to the trigger mechanism of the firearm. And we know that from, say, the minigun case, which deals with the switch. That's the trigger mechanism for that firearm. For a bump stock equipped firearm, it's the trigger. It's when you hit the trigger and the mechanism resets. But something has to, as you say, hit it. It does. It has to be some kind of human interaction with the weapon, right? Yes, between rounds. And that's what makes it not be a machine gun. And, Your Honors, I'd like to reserve the rest of my time. Thank you. Thank you. Good morning, Your Honors. Good morning. May it please the Court, Brad Hinchwood for the government. I just want to begin by focusing on the statutory terms here. One of the reasons, and there are several, that deference is not implicated in this case, is that the Supreme Court has been clear that where the Court would reach the same interpretation by applying the regular tools of statutory interpretation, there's no need to reach questions about whether deference is required. So deference is not needed because the terms are clear. There's no ambiguity here. Certainly. That's your view? Certainly, Your Honor. And that's what the district court here actually concluded. The district court said, look, I understand there's this fight about deference that's sort of lurking and maybe there are some questions there, but I don't need to rely on any sort of deference doctrine to conclude that the government has given me the correct reading of the statutory terms here. But it didn't say that it wasn't ambiguous or that there wasn't potentially different meanings. Right. But even then, even if you thought there was some ambiguity, which, again, we don't, and I'm happy to discuss why, even if you thought there was some ambiguity, that wouldn't change the fact that the government's given the correct or the clearly best reading of the statute. And that itself is enough to, you know, resolve this case without reaching questions about deference. I mean, the district court decided the case on the best reading of the statute. Correct. And she said yours was better than Opossian's. Correct. Exactly. And that's why we don't think, we think essentially the district court got this exactly right. I mean, she looked at the statutory terms. Well, what if we disagree? I mean, and what if we don't want to go there because we think Chevron deference applies? Let me understand. I read your briefs towards the end of the brief to have a paragraph that seemed to indicate that if we do apply Chevron deference, you agree that it's reasonable that it passes muster. I think there's a paragraph in there that says that. I understand you don't want us to go there, but I want to make sure I understand at least your position if we disagree and find Chevron deference applies. Absolutely. So you are correct. There is a paragraph in there where we say sort of if you accept a series of sort of premises that lead up to that point, then the D.C. Circuit's decision is correct if all those premises are true. The thing is we don't agree with several of the premises leading up to it. So the first is the one I just discussed, which is that the court doesn't need to get into this question at all because the government's just given the correct reading of the statutory terms. So you're not deferring to anything the agency's doing. You're just recognizing that we're right about the statute. Then the second thing is the rule here by its terms is an interpretive rule, not a legislative rule. And there are several ways that we know this is true. So first of all, I think it's just useful to keep in mind, if someone were to be criminally prosecuted for possession of a bump stock, they're going to be prosecuted under the statute, not under the regulation. And, of course, that's different from many other contexts. So think about, for example, the Securities and Exchange Commission, which promulgates regulations and people can be criminally prosecuted for violating the regulation, not the statute itself, but the regulation. That's not going to happen in this context. And then the rule itself makes very clear in multiple places that the force of law, which is the key distinction between an interpretive rule and a legislative rule, the only force of law at issue here is coming from the statute, again, not from the regulation. So I'd look at page 529, Your Honor, of the rule where the rule says in a couple of places, look, first of all, this isn't a discretionary policy choice the agency is making. The agency has concluded that the statutory terms cover these devices. Therefore, they must be regulated. And on that page and then again on page- And they talk about Chevron in that discussion, in the rule, do they not? There is a- So this just seems to be mass confusion to me because if it is interpretive only, why in God's name would they refer to Chevron? Your Honor, there's a three-paragraph discussion of Chevron in the 40-page rule that begins by saying the statutory terms, we're giving the correct reading, the plain meaning of the statutory terms, and then sort of goes on to say, well, of course, if for some reason you thought, maybe then, obviously what we're doing is reasonable. But that doesn't change the key distinction the Supreme Court has recognized. If you look at Perez v. Mortgage Bankers Association, where the Supreme Court talked about the distinction between legislative and interpretive rules, the key distinction is that force of law question. Why was the rule published? Why was there notice and comment and the rule published? That's not the usual thing for something that is merely interpretive. That's correct, Your Honor. But I think if you look again at page 529, there's some discussion of this and a couple other places in the rule, the agency recognized that, you know, these devices had obviously gone on the market, people had purchased them, there were, you know, an unknown number of possessors across the country, and there was a desire to raise the profile of the fact that, you know, ATF had reached a different conclusion upon further examination under the statute. And so they wanted to raise public awareness of the fact that, you know, these devices actually had been classified as machine guns and that people who, you know, had come into possession of those devices could come into compliance with the statute. Now, the rule is very clear that no one is going to be prosecuted on the basis of possession of a device prior to the effective date of the rule. And that's precisely to, you know, relieve the sorts of concerns that my colleague was pointing to about individuals who came into possession of these devices. So that's sounding again like force of law. You have until this date to turn over your bump stock, and anything you have after that is a violation of the law. Your Honor, I agree that some of it could have been phrased more clearly, but the point is that... That's pretty clear. It is clear. Your Honor, there are several... Your Honor, again, to go back to my points about where the force is coming from in the statute, again, I'd point you to, you know, pages 520, 529, and 535. Each of those are places where the agency is saying, look, you know, people have given us comments that we shouldn't do this because it will or will not increase public safety or they've said we should consider regulatory alternatives, and we're telling you we don't have an alternative. We don't get to consider those things. The statute covers these devices, period, end of story. Our hands are tied on that. And the same point, Your Honor, the rule repeatedly says that these devices were misclassified. Now, that description only makes sense if those devices were machine guns at the time they were made. The fact that the agency has corrected an error, which is another thing the agency says it's doing, it's not an error if the device wasn't a machine gun and is only becoming a machine gun after the promulgation of the rule. Those statements are not consistent with, you know, the idea that this is somehow creating new substantive criminal liability. Now, I grant you that there is some language that could have been written better, but that's an exercise of the agency's prosecutorial discretion in recognition of the fact that many individuals obviously had possession of these devices in the meantime. Assume for me that this was a legislative rulemaking. Where do you come out on Chevron Step 1? Your Honor, we think, again, the agency's interpretation of the statute is just right. So, again, you're not deferring to the agency at Step 1 because the agency's given the correct interpretation of the statute. Because there's no ambiguity. Right. We don't believe there's an ambiguity as applied to these devices. And we would only give you deference if there was ambiguity. Correct. Okay. So, however we address your position, your position is under Chevron, just give us the best reading because you wouldn't defer. There's nothing to defer to. It's just the best reading. Right. And even if Chevron doesn't apply, we still win because it's the best reading. Right. I mean, that's part of why I think some of this conversation about deference is a little bit misplaced because that assumes that there needs to be deference in order for the government to prevail in this case, which is, I think, not at all true. I guess the ambiguity issue is lurking, isn't it? It's, to me, not all that clear what automatically means or what function means. Well, I'm happy to discuss those terms, your Honor. Give it a shot, so to speak. Oh, absolutely. No pun intended. Of course. Well, your Honor, to start with the term single function of the trigger, courts have long recognized that that looks to the shooter's act of initiating the firing sequence, whatever step the shooter takes to begin that firing cycle. And courts have applied that interpretation and that understanding to numerous devices, including bump stocks, a device called the Akins accelerator, that operates identically with respect to this portion of the statutory definition as the devices at issue here. So you may recall the Akins accelerator has the same basic structure but has a spring inside the stock. So, you know, you pull the trigger once and your finger stays stationary while the gun sort of goes back and forth with the spring. The 11th Circuit said that's a machine gun, single function of the trigger. It doesn't matter that the trigger, as my colleague suggested, is being mechanically, you know, sort of manipulated or operated each time. The point is that the shooter does one thing. They pull the trigger and the gun fires until they either take their finger away or they run out of ammunition. So as to that part of the definition, you know, and there are numerous other devices we've described in our brief, and there's some in the addendum, some examples, that, you know, the particular, you know, there are all manner of sort of creative devices that people try to create to, you know, skirt the statutory ban on machine guns, and this is sort of the latest iteration of that. And any number of those devices on plaintiff's interpretation simply wouldn't qualify under the statute, and that would not make a whole lot of sense if you consider. But wouldn't, I mean, does it all get back to whether the action that's ultimately caused by the gun results from a single pull of the trigger? So that's the ordinary situation. And you say that's been the rule, it is the rule, it applies to all mechanisms that anyone's attempted to say are not machine guns because they really are? I'm sorry, I want to make sure I'm following the question. Certainly there are devices that are initiated by something other than a pull, which is part of why that statutory function is so important, because it makes sure that the statute sweeps broadly to encompass the full range of, you know, machine guns. Aren't we back into the ambiguity of what is function? What causes this function? Is it really just a single pull of the trigger? With respect to these devices, it is, because what you do with one of these devices is you pull the trigger once, and the weapon continues to fire. But there could be other devices that are, that begin to shoot without a single pull of a trigger? Correct. And so that's why the statute... And they're also machine guns? Absolutely. So, I mean, the rule itself talks about, at the time of the enactment of the National Firearms Act in 1934, there were machine guns that were operated by a push paddle that you push with your thumbs. That's in footnote five of the rule. So, absolutely. But the point is that that statutory term is meant to be broadly inclusive of the types of different ways you can initiate a firing sequence, because Congress didn't want you to be able to say, well, I'm not pulling the trigger. Instead, what I'm doing is I'm pushing something, or I push a button, or I flip a switch. So it's a single function of the trigger. Right. So whatever the shooter is doing to initiate that firing sequence. And, you know, so with respect to that part of the definition, I mean, I don't think plaintiff has pointed to anything, any court that's ever accepted this sort of highly mechanistic approach to that statutory term. I mean, first of all, it would conflict with the Eleventh Circuit and Aikens. And I can't... How about an Aikens accelerator? Presumably, I could fire that with one hand, and it would keep shooting. Right. That's not true with this device, is it? That's correct. Okay. So I have to do something more than just pull the trigger, or have to do more than make the trigger function one time to make it keep shooting. I have to do another action with my, in my case, my left hand. Right. But there's no reason that the statutory definition excludes a device like that. There's nothing in the word automatically. Well, then I have multiple functions of the trigger. Well, no, it's not multiple functions of the trigger. How about... You have, the shooter is still taking one act. The point is, once you've set the conditions for the bump stock to operate, and you pull the trigger, it just goes. I mean, yes, the shooter has to maintain pressure on the other, on the forestock or barrel shroud of the weapon, as the rule explains. But the point is that the shooter, once they've set those conditions appropriately, they pull the trigger and the weapon just continues to fire. So the fact that you can relocate the pressure from the trigger back here, on a weapon everyone agrees is a machine gun, to up here, that doesn't mean that you somehow escape the statutory definition of machine gun. I mean, everybody agrees you have to keep putting pressure to keep the weapon firing. What if I have a firearm that doesn't have a bump stock on it, but I'm capable with my finger of firing it 350 times a minute? That's not a machine gun. I mean, assuming it's not otherwise modified, then it's not a machine gun. And the fact that you can pull and release the trigger very quickly, you don't turn yourself into a machine gun. The statute is concerned with devices, in this case a device specifically designed and intended for converting a weapon into a machine gun. And so, Your Honor, to give you another example, I mean, you can imagine a weapon that operated by having sort of always-on safety, right? And so with your left hand, in your situation, you have to press down on the always-on safety before you can pull the trigger and fire it like a machine gun. No one would say that's not a machine gun because you have to do something with your other hand. Well, I wouldn't say it's not a machine gun, but my definition might differ from the statutory language. I mean, when I look at a bump stock, it looks a lot like a machine gun to me, but I'm having a hard time squaring the language. Well, Your Honor, if your concern is the term automatically, there's no way to derive. I think the district court, again, got this exactly right. It sort of pointed out, look, this trying to derive some difference in sort of like, well, it has to operate with one hand, or it has to operate without any further input from the shooter. That has to be what automatically means. That's not consistent with the dictionary definitions. It's not consistent with the way the Seventh Circuit, for example, interpreted that term. Don't you have a problem with the fact that I can shoot a gun with a bump stock without making it an automatic function? I can choose. I mean, take away my one-hand example. I can hold it with two hands and just, like I would a normal rifle. And as long as I'm not using forward pressure, I'm shooting one at a time. Right, Your Honor. Well, if you have a weapon that everybody agrees is a machine gun, imagine an AK-47. Those often have a toggle that will go between automatic and semi-automatic fire, and no one thinks that they're not machine guns just because you can toggle them back and forth. So the point is, Your Honor, the statutory terms, I haven't seen anything in plaintiff's brief, which I think, frankly, primarily focuses on Chevron, that would distinguish the sort of whole range of devices that we're talking about that I think everyone would agree qualify as machine guns under the statute. Is there something in the record where I can see what you just told me about the toggle on an AK-47, where I can toggle back and forth between semi-automatic and fully automatic? I don't know that there's anything in the record for the preliminary injunction, and I'm not sure if something's in the administrative record. Of course, remember, we're on a PI. But even just taking that as a hypothetical, even if you don't want to treat it as a fact, the same principle would apply. You couldn't avoid the statute by just adding a toggle. You'd say, well, now I've got to take two steps for it to fire automatically or fire like a machine gun. Everyone would say, well, no, you still, when you do the first thing, a lot of bullets come out the other end, and all you have to do is take that first step. Thank you. Thank you, Your Honor. Your Honors, the ATF cannot manufacture an ambiguity in the statute just by proposing a confusing regulatory definition. And I think that's what they've tried to do here, because the statute draws a very clear distinction. And the statute, which is Congress's decision about what is and is not a prohibited weapon, says that it's the single function of the trigger. And I think this Court has very astutely recognized machine gun is something that you can operate one-handed. You function the trigger however that is. You pull it, you flip the switch, whatever it is, and then it keeps firing. And a bump stock doesn't operate that way. And the ATF agrees a bump stock doesn't operate that way. And it cannot be squared. But it begins, his theory, I guess, is that it begins with this single function, one movement of a trigger. But what they acknowledge is that for every shot fired with a bump stock, the trigger finger separates from the trigger, the mechanism resets, and the finger once again bumps the trigger and engages the mechanism. That's how they've described the operation of a gun with a bump stock. I thought the mechanism hit the trigger finger. I didn't think the trigger finger actually continued to move. No, the trigger finger must use contact with the trigger. Does it repeatedly touch it? It repeatedly touches it and between touches. And moves it, as you would if you were shooting a single-shot gun. Correct. And in between, the trigger mechanism resets. Can I probe this? Go ahead, sure. That's slightly inaccurate, though, because this will not make for good record, but you're not moving your finger back and forth. Your finger is sitting on a ledge. Yes. And the machine is moving your finger back and forth. Your finger does continue to hit the trigger, but it's not because you're continually squeezing the trigger. No, but it's because there are two actions. There are two manual actions by the shooter. There's the constant forward pressure with the non-shooting hand and constant rearward pressure with the trigger finger. And that is a very unnatural shooting act. When you normally shoot a gun, pull it back, the entire gun. A bump stock has to operate. You have to pull through separately with the two arms, and it can't function otherwise. If any chain in that movement stops, the gun stops firing, and you will not fire again. Thank you for your question. That's what I was trying to say. Thank you, both, for your arguments this morning. The case is submitted. Court is in recess until 8.30 tomorrow morning.